# Barron & Berry, L.L.P.
## Attorneys at Law

Vance Barron, Jr
Frederick L. Berry
Jamie Lisa Forbes

Office Address
Suite 310
301 South Greene Street
Greensboro, NC 27401

Mailing Address
P. O. Box 2370
Greensboro, NC 27402-2370

Telephone 336-274-4782
Fax 336-379-8592

July 5, 2006

*VIA CERTIFIED MAIL*

Louisville Ladder, Inc.
In care of C. T. Corporation System,
    Registered Agent
225 Hillsborough Street
Raleigh, NC 27603

    Re:    James Paul Pugh III vs. Louisville Ladder, Inc., Louisville Ladder Group, L.L.C., and Home Depot U.S.A., Inc.

Dear Sir or Madam:

    Enclosed with this letter are copies of the Civil Summons and Complaint in the above captioned case. Delivery of these documents with this letter, which is being sent by certified mail, is duly authorized service of process. Please read the Civil Summons, which will advise you of the requirement to serve a written answer to the Complaint.

                                       Yours very truly,

                                       Vance Barron, Jr.
                                       Attorney for James Paul Pugh III

Enclosures

EXHIBIT A

# STATE OF NORTH CAROLINA

____GUILFORD____ County

File No. 06CVS8070

In The General Court Of Justice
☐ District  ☒ Superior Court Division

**Name Of Plaintiff**
JAMES PAUL PUGH III

**Address**
7178 CHARNELL LANE

**City, State, Zip**
CLIMAX, NC 27233

**VERSUS**

**Name Of Defendant(s)**
LOUISVILLE LADDER, INC.;
LOUISVILLE LADDER GROUP, L.L.C.; and
HOME DEPOT U.S.A., INC.

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS

G.S. 1A-1, Rules 3, 4

**Date Original Summons Issued**

**Date(s) Subsequent Summons(es) Issued**

**To Each Of The Defendant(s) Named Below:**

**Name And Address Of Defendant 1**
LOUISVILLE LADDER, INC.
by service upon its registered agent,
C T Corporation System
225 Hillsborough Street
Raleigh, North Carolina 27603

**Name And Address Of Defendant 2**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

**Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)**
VANCE BARRON, JR.
BARRON & BERRY, L.L.P.
POST OFFICE BOX 2370
GREENSBORO, NORTH CAROLINA 27402-2370

**Date Issued:** 6-30-06  **Time:** 3:40  ☐ AM ☒ PM

**Signature**
☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

☐ **ENDORSEMENT**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

**Date Of Endorsement**  **Time**  ☐ AM ☐ PM

**Signature**
☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts            (Over)

## RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

### DEFENDANT 1

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason:

### DEFENDANT 2

| Date Served | Time Served ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|
| | | |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)

☐ Other manner of service (specify)

☐ Defendant WAS NOT served for the following reason.

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
|---|---|
| Date Received | Name Of Sheriff (Type Or Print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 10/01
©2001 Administrative Office of the Courts

FILED
'05 JUN 30 PM 3: 40
GUILFORD COUNTY, C.S.C.
BY [signature]

NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE
GUILFORD COUNTY | SUPERIOR COURT DIVISION
GREENSBORO DIVISION
06 CVS 8090

JAMES PAUL PUGH III,

    Plaintiff,

v.

LOUISVILLE LADDER, INC.,
LOUISVILLE LADDER GROUP, L.L.C.,
and HOME DEPOT U.S.A., INC.,

    Defendants.

COMPLAINT

The plaintiff, complaining of the defendants, alleges:

### COUNT I.
(Breach of Express Warranty)

1. The plaintiff, James Paul Pugh III ("Pugh"), is a citizen and resident of Climax, Guilford County, North Carolina.

2. The defendant Louisville Ladder, Inc., is a corporation organized under the laws of the State of Delaware. Louisville Ladder, Inc., has its principal place of business in Louisville, Kentucky, and is qualified to do business and is doing business in North Carolina.

3. In 2002 and 2003 the defendant Louisville Ladder Group, L.L.C., was a limited liability company organized under the laws of the State of Delaware and was qualified to do business and was doing business in North Carolina. On or about December 31, 2004, Louisville Ladder Group, L.L.C., merged with and into Louisville Ladder, Inc., the surviving corporation. By virtue

of the merger, Louisville Ladder, Inc., assumed and is responsible for the legal obligations of Louisville Ladder Group, L.L.C.

4. The defendant Home Depot U.S.A., Inc., ("Home Depot") is a corporation organized under the laws of the State of Delaware and has its principal place of business in Atlanta, Georgia. At all times pertinent to this Complaint, Home Depot was doing business as The Home Depot, a retail sales company. Home Depot was authorized to do business and was doing business in the State of North Carolina.

5. In 2002 and 2003, Louisville Ladder Group, L.L.C., was engaged in the business of the design, manufacture, and sale of portable aluminum stepladders under the trade name "Louisville Ladder." Louisville Ladder Group, L.L.C., was both a *manufacturer* and a *seller* of portable aluminum stepladders as defined in N.C. Gen. Stat. § 99B-1(2) and (4) and was a a *merchant* of portable aluminum stepladders as defined by N.C. Gen. Stat. § 25-2-104(1).

6. In 2002 and 2003, Home Depot was engaged in the retail business of selling portable aluminum stepladders with the trade name "Louisville Ladder." Home Depot was a *merchant* of portable aluminum stepladders as defined by N.C. Gen. Stat. § 25-2-104(1) and was a *seller* of such stepladders as defined by N.C. Gen. Stat. § 99B-1(4).

7. On March 4, 2003, Pugh purchased an eight-foot "Louisville Ladder" stepladder (hereafter referred to as "the stepladder") from the Home Depot retail store at 2912 South Elm Street in Greensboro, North Carolina, for household use. The stepladder was "Louisville Ladder" model number L2211-08S with the serial number 7 28865 08068 4 on the label.

8. The stepladder was manufactured by Louisville Ladder Group, L.L.C., in Monterey, Mexico, in July, 2002. The label placed on the stepladder by Louisville Ladder Group, L.L.C., stated

2

that it was an ANSI (American National Standards Institute) Type II (commercial grade) stepladder with a load capacity of 225 pounds and that it met the standards of ANSI Code A14.2 and OSHA. Those affirmations of fact on the label were express warranties within the meaning of N.C. Gen. Stat. § 25-3-313 made by Louisville Ladder Group, L.L.C., and Home Depot and were part of the basis of the bargain when Pugh purchased the stepladder from Home Depot. The express warranties were intended for the consumer who purchased the stepladder, and Pugh relied upon the information on the label in selecting the stepladder for purchase.

9. Pugh used the stepladder for the first time on July 10, 2003. The stepladder had not been altered, modified, or damaged while in his possession from the date he purchased it from Home Depot. It was in the same condition as it was at the time he purchased it. It appeared to be in good condition. He carefully erected the stepladder on the bare hardwood floor of his living room in order to install a shade in the ceiling skylight. The living room floor was level and provided a stable, hazard-free platform for the ladder. He was standing on the sixth rung and had a portable battery-operated screwdriver weighing less than two pounds in his hand as he was screwing a metal rail for a shade on the skylight. He was well centered over the stepladder and was in balance and full control of his body. Pugh was using the ladder for its normal and intended use in conformity with the instructions on the ladder. The total weight on the ladder was less than the 225-pound capacity listed on the label. Suddenly without warning, the lower side rails of the stepladder buckled and pitched Pugh down to the floor, where he landed on his head, neck and upper back. The fall knocked him unconscious. The stepladder was permanently deformed by the buckling.

10. Pugh lay unconscious on the floor for an indeterminate period of time. When he awoke, he had double vision and a severe headache, and he was mentally confused. Subsequent

3

medical diagnosis revealed that the fall caused a severe closed head injury to Pugh: bilateral cerebral strokes secondary to vertebral artery dissections.

11. On July 14, 2003, Pugh notified the representatives of Louisville Ladder Group, L.L.C., about the defective ladder and told them that he had been injured in a fall.

12. When the stepladder was purchased by Pugh, it had cracks in the aluminum at the rivet holes on the side rails of the ladder. Although the significance of such cracks at the rivets would not be apparent to an ordinary consumer, and were not in fact apparent to Pugh when he inspected the stepladder, the cracks were a material defect in the stepladder that drastically reduced the compressive lateral buckling load of the side rails below its stated load-bearing capacity of 225 pounds. In such a condition, the stepladder was very hazardous to a consumer like Pugh while using the stepladder in its normal, intended use.

13. The stepladder breached the express warranties made by Louisville Ladder Group, L.L.C., and Home Depot in the following respects:

(a) The stepladder as sold to Pugh was not capable of supporting a load of 225 pounds as represented on the label;

(b) The stepladder did not conform to ANSI duty rating II as represented on the label;

(c) The stepladder as sold to Pugh did not conform to ANSI Code 14.2 as represented on the label; and

(d) The stepladder as sold to Pugh did not conform to OSHA standards as represented on the label, which standards included the requirement in 29 C.F.R. § 1926.1053 that a self-supporting portable ladder be capable of supporting at least four times the maximum intended load without failure.

4

14. As a direct and proximate result of the fall, Pugh suffered loss of consciousness, concussion, mental confusion, double vision, severe headache, hematoma to the back of his head, pain in his neck and back, pain in his left shoulder, bilateral vertebral artery dissections with subsequent bilateral cerebellar strokes, and dizziness.

15. Pugh's consequential damages for his injuries are as follows:

(a) Past and future medical expenses for the treatment of his injuries, including treatment by medical doctors and therapists;

(b) Past and future pain and suffering;

(c) Past and future loss of use of parts of his body;

(d) Past and future loss of wage earning capacity; and

(e) Such other consequential damages as become evident after the filing of this Complaint.

The compensatory damages for his personal injuries exceed the amount of $10,000.00. Louisville Ladder Group, L.L.C., and Home Depot are jointly and severally liable to Pugh for all such damages. As the successor to the obligations of Louisville Ladder Group, L.L.C., Louisville Ladder, Inc., is also jointly and severally liable to Pugh for all such damages

16. In addition, the defendants are jointly and severally liable to Pugh for prejudgment interest on all such damages.

## COUNT II.
(Breach of Implied Warranty of Merchantability)

17. The preceding paragraphs of the Complaint are incorporated herein by reference and are realleged.

5

18. Louisville Ladder Group, L.L.C., and Home Depot impliedly warranted the stepladder to be *merchantable* as defined by N.C. Gen. Stat. § 25-2-314.

19. The stepladder breached the warranty of merchantability imposed by N.C. Gen. Stat. § 25-2-314 because it would not pass without objection in the trade under the contract description; it was not of fair average quality within the contract description; it was not fit for the ordinary purposes for which such stepladders are used; it was not adequately labeled as the contract required; and did not conform to the affirmations of fact on the label on the stepladder.

20. As a direct and proximate consequence of the breach of the implied warranty of merchantability by Louisville Ladder Group, L.L.C., and Home Depot, Pugh was injured as hereinbefore alleged and is entitled to recover damages from Louisville Ladder Group, L.L.C., Louisville Ladder, Inc., and Home Depot, jointly and severally, as set forth above.

## COUNT III.
(Negligence)

21. The preceding paragraphs of the Complaint are incorporated herein by reference and are realleged.

22. Louisville Ladder Group, L.L.C., acting by and through its authorized agents, was negligent in the design, manufacture, or inspection of the stepladder as follows:

(a) The materials used to construct the ladder were insufficient to withstand the normal, reasonably expected, and rated use of the stepladder.

(b) The stepladder was manufactured with cracks emanating from the rivet holes in the side rails, which reduced the load-carrying capacity of the ladder significantly below the normal, reasonably expected, and rated use of the stepladder.

6

(c) The stepladder was not adequately inspected after its manufacture to discover the cracks emanating from the rivet holes in the side rails, which reduced the load-carrying capacity of the ladder significantly below the normal, reasonably expected, and rated use of the stepladder.

Because of the negligence of Louisville Ladder Group, L.L.C., the stepladder was defective when it was sold and delivered by Louisville Ladder Group, L.L.C., to Home Depot.

23. Home Depot, acting by and through its authorized agents, negligently failed to adequately inspect the stepladder before its sale to discover the cracks emanating from the rivet holes in the side rails, which reduced the load-carrying capacity of the ladder significantly below the normal, reasonably expected, and rated use of the stepladder.

24. As a direct and proximate consequence of the breach of the negligence of Louisville Ladder Group, L.L.C., and Home Depot, Pugh was injured as hereinbefore alleged and is entitled to recover damages from Louisville Ladder Group, L.L.C., Louisville Ladder, Inc., and Home Depot, jointly and severally, as set forth above.

WHEREFORE, the plaintiff demands judgment against the defendants, jointly and severally, as follows:

(a) Compensatory damages in an amount in excess of $10,000.00 plus prejudgment interest thereon at the legal rate from the time of the filing of this Complaint;

(b) Taxation of the costs of this action;

(c) Trial by jury on all issues; and

(d) Such further relief as justice may require.

7

This the 30th day of June, 2006.

*Vance Barron, Jr.*
Vance Barron, Jr.
State Bar No. 5499
Attorney for Plaintiff

*Frederick L. Berry*
Frederick L. Berry
N.C. State Bar No. 9696
Attorney for Plaintiff

OF COUNSEL:

BARRON & BERRY, L.L.P.
301 South Greene Street, Suite 310
Post Office Box 2370
Greensboro, North Carolina 27402-2370
Telephone: (336) 274-4782
Facsimile: (336) 379-8592

8